[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-10563
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 19, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-02313-CV-T-27-TBM

PENELOPE SEWALD,

Plaintiff-Appellee,

versus

JOHN RESINGER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 19, 2009)

Before EDMONDSON, CARNES and WILSON, Circuit Judges.

PER CURIAM:

Respondent-Appellant John Reisinger appeals the district court's grant of Petitioner-Appellee Penelope Sewald's petition for the return of her child, AR, pursuant to the International Child Abduction Remedies Act, 42 U.S.C. § 11601 et seq. ("ICARA"), which implements the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention"). No reversible error has been shown; we affirm.

The facts largely are uncontested.[1] Petitioner is a United States citizen born in Germany in 1969. Petitioner spent her first year of life in the United States but then returned to Germany where she remained until she traveled to the United States in 2003. During this trip -- which lasted about 18 months -- Petitioner and Respondent developed a relationship. Even though Petitioner returned to Germany, the two remained in contact. Petitioner returned to the United States in May 2005 and married Respondent in August 2005. At the time of the marriage, the couple resided in Tampa, Florida, with Petitioner's son "J"; it was their understanding that Petitioner would return occasionally to Germany to visit her oldest son who remained in Germany with his father. In December 2005, Petitioner and J returned to Germany ostensibly for a visit; but Petitioner decided

---

[1]An evidentiary hearing was conducted on the petition before a magistrate judge.

2

unilaterally to remain in Germany and so notified Respondent.

Petitioner was pregnant at the time of her return to Germany; the couple's child, AR, was born in Germany in May 2006. Respondent was present at his child's birth and thereafter visited regularly with AR.[2] The testimony shows that Respondent was in close contact with AR, tried continuously to convince Petitioner to return to the United States and to reconcile with him, and sent Petitioner financial support. Testimony also shows that Respondent purchased two vehicles for Petitioner's use in Germany, accompanied Petitioner and AR on a visit to AR's German doctor, accompanied Petitioner on visits to review potential pre-schools for AR in Germany, and agreed with Petitioner on the school in which AR would enroll in Germany. AR -- except for visits to the United States to see his father -- has spent his entire life in Germany.

In August 2008, at Respondent's expense, Petitioner brought AR, his two older half-brothers and a friend of one of the older boys to the United States on round-trip tickets from Germany to Tampa. The day before Petitioner was scheduled to return to Germany, she discovered that AR's passport was missing. Respondent refused to surrender AR's passport to Petitioner. Petitioner initiated these Hague Convention proceedings to allow her to return to Germany with her

---

[2]Respondent traveled to Germany to see his son and also financed visits to the United States by Petitioner, AR and AR's half-brothers.

3

sons.

Under ICARA, a person may petition a court in the jurisdiction where a child is located for the return of the child to the child's "habitual residence" in another signatory country. See 42 U.S.C. § 11603. The focus of a court entertaining an ICARA and Hague Convention petition is on the merits of the abduction and/or retention claim; the merits of the underlying custody battle are no part of the inquiry. See 42 U.S.C. § 11601(b)(4); Ruiz v. Tenorio, 392 F.3d 1247, 1250 (11th Cir. 2004).

To prevail on a claim for relief under the Hague Convention and ICARA, the petitioner must establish by a preponderance of the evidence that the child was "wrongfully removed or retained within the meaning of the Convention." 42 U.S.C. § 11603(e)(1)(A). So Petitioner had to prove that: (1) AR was "habitually resident" in Germany at the time Respondent seized his passport and thereby caused him to remain in the United States; (2) the retention constituted a breach of Petitioner's custody rights under German law; and (3) Petitioner had been exercising her custody rights at the time of the retention. See Hague Convention, art. 3; Ruiz, 392 F.3d at 1251. If a Hague Convention petitioner carries the initial burden of proving a wrongful removal or retention, the child must be returned unless one of the Convention's defenses applies. Defenses must be shown by clear

4

and convincing evidence.  See Hague Convention art. 13(b) and art. 20; 42 U.S.C. § 11603(e)(2)(A).

The magistrate judge issued a report and recommendation ("Report") concluding that (1) AR's habitual residence was in Germany with the Petitioner; and (2) Respondent's seizure of AR's passport constituted a wrongful retention of AR. The Report also rejected the two defenses advanced by Respondent: (1) returning AR to his mother would pose a grave risk of exposing the child to physical or psychological harm, and (2) returning AR would violate fundamental principles relating to the protection of human rights.  The district court, after a de novo review, adopted, confirmed and approved the Report in all respects.

In our review of Hague Convention cases, "we accept the district court's finding of historical facts unless clearly erroneous."  Ruiz, 392 F.3d at 1252.  But the ultimate issue of "habitual residency" -- a concept key to Hague Convention suits but undefined in the Hague Convention and the ICARA -- is reviewed "de novo, considering legal concepts in the mix of facts and law and exercising judgment about the values that animate legal principles."  Id. (internal quotation and citation omitted).

That Petitioner and Respondent entertained different ideas initially about where AR should be raised is clear.  But the district court found and concluded that

5

the objective evidence revealed that Petitioner and Respondent, over time, came to share the intention that -- absent the couple's reconciliation -- AR would reside in Germany with his mother. In the light of the historical facts found by the district court, our de novo review confirms that Germany was AR's habitual residency immediately before Respondent seized the child's passport.

Respondent argues that irrespective of AR's habitual residency, no wrongful retention and no Hague Convention or ICARA violation could be shown. In support of this argument, Respondent cites Pielage v. McConnell, 516 F.3d 1282 (11th Cir. 2008). In Pielage, we had occasion to consider whether a ne exeat order issued by an Alabama court prohibiting the removal of a child from the state court's jurisdiction during the pendency of a custody dispute constituted an "unlawful retention" for Hague Convention and ICARA purposes. We concluded that it did not: under the facts of Pielage, no change in the child's usual family and social environment was effected by the ne exeat order.

The facts and context here are markedly different. AR's retention was caused by the surreptitious seizure of his passport, not by a lawful state court order. And the retention of AR in the United States disrupted and otherwise altered significantly the family and social environment to which he was accustomed. Although language in Pielage suggests that the Hague Convention has no

6

application when physical care of the child is unchanged, the <u>Pielage</u> court was deciding the case before it; it could not and did not make binding law beyond the factual basis of the case before it.   <u>Pielage</u> says little about the application of the Hague Convention to the materially distinguishable facts presented here.  In the light of the wrongful retention effected by the seizure of AR's passport, Petitioner's petition for the return of AR was due to be granted unless Respondent showed by clear and convincing evidence that a defense applied.

The district court concluded that Respondent failed to present clear and convincing evidence that a defense applied.  About Respondent's  claim that AR's return to Germany would expose him to a grave risk of physical or psychological harm, no evidence was proffered that Petitioner ever harmed her children.  Although Petitioner suffered some mental health problems, we see no error in the district court's conclusion that insufficient evidence supported the assertion that Petitioner's mental health presented a current grave danger to AR.  And we agree with the district court that Respondent's human-rights-based claim is without merit.

AFFIRMED.